This is an appeal from a jury verdict in favor of defendants, the Stanleys, in a suit brought by plaintiff, Jack E. Bradford, to recover damages for physical injury done to his real property when defendants' dam broke flooding plaintiff's land. We affirm.
A highway separates the property of plaintiff and defendants which is located in Baldwin County, and a natural stream flows through defendants' property, goes under the highway, and drains into plaintiff's pond. An unprecedented rainfall occurred in November, 1975 during which plaintiff's property was damaged by flood waters from the breakage of defendants' dam. Mud and debris were deposited in plaintiff's pond and several objects such as a bench, a fence, and some shrubbery were washed away.
The main question for review is whether the jury wrongfully decided the issue of liability. Plaintiff contends that *Page 330 
defendants are liable for the damage to his land because of negligent construction and maintenance of the dam. He urges that it is our duty to reverse because it is clear from the evidence that the jury verdict is wrong.
The record reveals extensive evidence on both sides which contested the construction and maintenance of the defendants' dam, the cause of its failure, and the cause of the damage to the plaintiff's property. The jury returned a general verdict for the defendants, and the evidence supports this finding. Moreover, it is well-settled in this state that a jury verdict is presumed correct and the jury's determination of factual issues will not be disturbed unless it appears plainly and palpably wrong. Kilcrease v. Harris, 288 Ala. 245,259 So.2d 797 (1972).
We believe that the rule of Dekle v. Vann, 279 Ala. 153,182 So.2d 885 (1966) applies to the facts of this case. As to lands outside a municipality, the lower land bears a servitude to the higher surface and must receive water that flows from the higher land. Under the evidence the jury could have found that plaintiff's property was located downstream from defendants' land, and the natural flow of water was toward the plaintiff's pond. In Law v. Gulf States Steel, 229 Ala. 305, 156 So. 835
(1934) we held that landowners cannot recover for damage to property due to an overflow caused by excessive rainfall if the injury would have occurred regardless of the existence of the dam. Testimony was given in the present case establishing an extremely heavy rainfall about the time and place in question and to flooding and washout conditions elsewhere in the vicinity. Water marks on trees, and debris on defendants' property surrounding the dam, indicated that flood waters could have come from upstream and in height that exceeded the Stanleys' dam itself.
In Alabama Fuel Iron Co. v. Vaughan, 205 Ala. 589,88 So. 857 (1921), we held that a defendant was not liable to plaintiff for an overflow of his lands from waters of a creek caused, not by defendant's negligence, but entirely by natural causes in the form of extraordinarily heavy rains. So in this case, the jury could have found that the rains were so extraordinary and unprecedented as to be acts of God. In its legal sense an "act of God" applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them. Gulf Red Cedar Co. v. Walker, 132 Ala. 553,31 So. 374 (1902). There is testimony in the record to establish that the rainfall in this vicinity in November of 1975 was a record one. It was a jury question to determine whether or not the rainfall was so unprecedented as to be deemed an act of God, Nashville, C. St. L. Ry. v. Yarbrough, 194 Ala. 162,69 So. 582 (1915), and that determination here will not be disturbed.
Plaintiff also contends that the trial court committed reversible error in allowing defense counsel to ask a leading question on direct examination:
 Q All right. Let's talk just a minute, if we may — You say you were doing some repair work throughout the county. Do you have any knowledge of any unusual rain that fell around that period of time, please, sir?
A Yes, sir. There was quite a rain.
 Q All right. And would this have been somewhere around November of '75, give or take. . . .
MR. BRANTLEY:
I object to him leading the witness.
THE COURT:
I think he is just trying to point out the time.
MR. BRANTLEY:
And I'm objecting. . . .
THE COURT:
Overrule.
MR. BRANTLEY:
We except.
MR. KILLION:
Q All right. Go ahead.
 A I don't remember any specific dates. But it was a record breaking rain as far as my knowledge of. . . . *Page 331 
Whether to allow or disallow a leading question is within the discretion of the trial court and except for a flagrant violation there will not be reversible error. Jones v. State,292 Ala. 126, 290 So.2d 165 (1974); Baldwin v. McClendon,292 Ala. 43, 288 So.2d 761 (1974); Anderson v. State, 104 Ala. 83,16 So. 108 (1894). We fail to appreciate any prejudice to plaintiff's case resulting from this question, therefore we cannot hold that the trial court abused his discretion in allowing this question, if it was leading. As the trial court noted, apparently counsel was attempting to fix the time of the occurrence. Besides, the witness did not answer the question, but replied that he could not remember any specific dates.
The plaintiff also maintains that the trial court erred in overruling his objection to a question directed to a defense witness on direct examination:
 A All right. Did Mr. Bradford make any statements to you at that time about his pond filling in with dirt or anything? This is before the rain.
MR. BRANTLEY:
Object to the question as leading the witness.
THE COURT:
Overrule the objection.
MR. BRANTLEY:
We except.
MR. KILLION:
You may answer.
MR. BRANTLEY:
 He has, in fact, may it please the Court, told the witness what to say.
THE COURT:
Overrule the objection.
MR. BRANTLEY:
We except.
It will be observed that the specific objections to the question were that it was "leading the witness," and "told the witness what to say." It is true that a leading question is one which suggests the answer sought; such a question also has been described as one which assumes a material fact not therefore testified to. Williams v. State, 34 Ala. App. 603, 42 So.2d 500
(1949). Applying each test to the question asked, we perceive that the question was not leading as that term is used to describe impermissible questions. As Justice Stone stated inBlunt v. Strong, 60 Ala. 572 (1877): "All the authorities agree, that direct and leading questions may be propounded to any witness, to lead his mind and attention up to any subject, upon which he is called to testify; . . ." That appears to have been the purpose of this question, rather than to suggest any particular answer. And contrary to the plaintiff's claim on appeal that the question assumes a fact to which the witness has not testified, the question does not assume the existence of any fact. The reference to the Bradford pond describes the statements inquired about, but as the question was asked, doesnot assume that the pond was filled. Accordingly, the trial court's ruling, based upon the objection made, was correct.
The final question for review is whether the trial court erred in not allowing a witness to state the reaction of certain potential buyers of plaintiff's property who viewed it after the flood:
BY MR. BRANTLEY:
 Q But in your judgment the difference in value of the two times was fifteen thousand dollars, is that correct?
 A I quoted the people the price before I got out there. I didn't know the damage was there until I got there.
Q You quoted it before you went there?
A Yes.
 Q And after the people you showed it to saw the property, what was their reaction to it?
MR. KILLION:
Object to that.
THE COURT:
Sustain.
MR. BRANTLEY:
I think it's relevant. He's gone into it.
THE COURT:
Sustain the objection.
MR. BRANTLEY:
We except. That's all. *Page 332 
Plaintiff contends now that this evidence was admissible as a "spontaneous exclamation," but when objection to "his reaction" was sustained, plaintiff did not make any offer to show what response would have been made. When the question does not on its face show the expected answer, for purposes of appeal the questioning party must make an offer of proof. Greer v. EyeFoundation, Inc., 286 Ala. 63, 237 So.2d 456 (1970). The trial court is vested with a reasonable discretion in determining whether a particular declaration falls within the "spontaneous exclamation" exception to the hearsay rule, Jones v. State,53 Ala. App. 690, 304 So.2d 34 (1974). We fail to see how that discretion could have been abused here when that court was not apprised of either the statement itself or the circumstances under which it was made. Harrison v. Baker, 260 Ala. 488,71 So.2d 284 (1954).
Let the judgment of the trial court be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.